DAVID L. PRINCE, ESQ. (#113599)
MILES L. PRINCE, ESQ. (#298823)
1912 E. Vernon Ave., Ste. 100
Los Angeles, CA 90058
(323) 234-2989 (t)
(323) 234-2619 (f)
miles@redchamber.com

ARTHUR JACOBS, ESQ. (*Pro Hac Vice Granted*)
BARBARA J. LIPSHUTZ, ESQ. (*Pro Hac Vice Granted*)
Jacobs & Burleigh LLP
1270 Avenue of the Americas, 7th Floor
New York, New York 10020
(212) 207-8787 (t)
(212) 207-8727 (f)
ajj@jacobsburleigh.com
bjl@jacobsburleigh.com

Attorneys for Defendant **AMERICAN BROADCASTING COMPANIES, INC.**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JOHN DLUGOLECKI, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SETH POPPEL, DANINE POPPEL, JARED POPPEL YEARBOOK LIBRARY, AMERICAN BROADCASTING COMPANIES, INC., DAILY MAIL AND GENERAL TRUST, and MEREDITH CORPORATION, *et al*.<br><br>Defendants. | Case No. 2:18-CV-03905-GW-GJS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Date:  July 18, 2019<br>Time:  8:30 a.m.<br>Courtroom:  9D<br><br>Hon. George H. Wu, *Presiding* |

# TABLE OF CONTENTS

**BRIEF STATEMENT OF FACTS** ................................................................ **1**

**THE LEGAL STANDARD GOVERNING THIS MOTION** ................................. **6**

**ARGUMENT** ........................................................................................... **8**

**I.   USE OF DLUGOLECKI'S IMAGES OF MARKLE FOR A FEW SECONDS IN CONNECTION WITH BIOGRAPHICAL FEATURES ON MARKLE IS A "FAIR USE"** ......................... **8**

   A.   Purpose and Character of the Use ................................................ 9

   B.   Nature of Plaintiff's Work ........................................................ 16

   C.   Amount of the Work Used ........................................................ 16

   D.   Effect of Use on the Potential Market ........................................ 17

   E.   Conclusion ............................................................................ 19

**II.   USE OF DLUGOLECKI'S IMAGES OF MARKLE FOR A FEW SECONDS IS DE MINIMIS AND, ACCORDINGLY, NOT A COPYRIGHT VIOLATION** ............................................... **20**

**CONCLUSION** ...................................................................................... **22**

1

## TABLE OF AUTHORITIES

2

3

**Cases**

4

*Addisu v. Fred Meyer, Inc.,* 198 F.3d 1130 (9th Cir. 2000). ..........................................7

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 106 S. Ct. 2505,
  91 L. Ed. 2d 202 (1986)..........................................................................................6

*Arica Inst., Inc. v. Palmer*, 970 F.2d 1067 (2d Cir. 1992) ................................9, 11, 15

*Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912 (9th Cir. 2001) ...............7

*Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir. 2015)...........................................9

*Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605 (2d Cir. 2006)..........9

*Calkins v. Playboy Enters. Int'l, Inc.*, 561 F. Supp. 2d 1136
  (E.D. Cal. 2008)...............................................................................................passim

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 114 S. Ct. 1164,
  127 L. Ed. 2d 500 (1994)...........................................................................8, 9, 10, 16

*Castle Rock Ent't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132 (2d Cir. 1998),.........8

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)......7

*Claims Mgmt. Servs. v. Delsman*, 2009 U.S. Dist. LEXIS 61825
  (N.D. Cal. July 17, 2009)......................................................................................9, 16

*Elvis Presley Enters. v. Passport Video*, 349 F.3d 622 (9th Cir. 2003) ..........13, 14, 17

*Forlenza v. AT&T*, 2004 U.S. Dist. LEXIS 29549 (C.D. Cal. April 4, 2004) ......20, 21

*Gordon v. Nextel Communs.,* 345 F.3d 922 (6th Cir. 2003)...................................20, 21

*Harper & Row Publishers v. National Enterprises*, 471 U.S. 539, 105 S. Ct. 2218,
  85 L. Ed. 2d 588 (1985)..........................................................................................16

*Hofheinz v. A&E Television Networks, Inc.*, 146 F. Supp. 2d 442 (S.D.N.Y. 2001)..12

*Hustler Magazine, Inc. v. Moral Majority, Inc.,* 796 F.2d 1148 (9th Cir. 1986)........16

*Infinity Broadcast Corp. v. Kirkwood,* 150 F.3d 104 (2d Cir. 1998) ...........................8

*Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003)....................................11, 16

*Lucasfilm Ltd. v. Ren Ventures*, 2018 U.S. Dist. LEXIS 144116
  (N.D. Cal. June 29, 2018)..........................................................................................8

*Marcus v. Rowley*, 695 F.2d 1171 (9th Cir. 1983) ......................................................16

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) ......................................................................................... 7

*Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003) ............. 16, 17

*Monster Communications, Inc. v. Turner Broadcasting Network, Inc.,* 935 F. Supp. 490 (S.D.N.Y. 1996) ...................................................................... 11, 12

*New Era Publications International, ApS v. Henry Holt & Co., Inc.*, 873 F.2d 576 (2d Cir. 1989), *cert. denied*, 493 U.S. 1094, 107 L. Ed. 2d 1071, 110 S. Ct. 1168 (1990) ........................................................................................................... 12

*Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18 (1st Cir. 2000) ........................... 11

*Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146 (9th Cir. 2007) ..................... 9, 16

*Red Label Music Publ., Inc. v. Chila Prods.,* 2019 U.S. Dist. Lexis 90159 (N.D. Ill. May 30, 2019) ........................................................................................ 12

*Ringgold v. Black Entertainment TV, Inc.*, 126 F.3d 70 (2d Cir. 1997) ............... 20, 21

*Rosemont Enterprises, Inc. v. Random House, Inc.*, 366 F.2d 303 (2d Cir. 1966), *cert. denied*, 385 U.S. 1009, 17 L. Ed. 2d 546, 87 S. Ct. 714 (1967) .......... 12

*Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) ................... 7

*Sofa Entertainment, Inc. v. Dodger Productions, Inc.*, 709 F.3d 1273 (9th Cir. 2013) 12

*Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730 (9th Cir. 1979) .............................. 7

*Video-Cinema Films, Inc. v. CNN, Inc.*, 2001 U.S. Dist. LEXIS 25687 (S.D.N.Y. November 28, 2001) ................................................................................... 8, 12, 15

*Weinberg v. Dirty World, LLC*, 2017 U.S. Dist. LEXIS 221759 (C.D. Cal. July 27, 2017) .................................................................................................................. 9, 10

*Wright v. Warner Books, Inc.,* 953 F.2d 731 (2d Cir. 1991) ...................................... 15

**Statutes**

17 U.S.C. § 107 .............................................................................................. 8, 11, 12

17 U.S.C. § 107(1) ................................................................................................ 9, 15

**Rules**

Fed. R. Civ. P. 56 .................................................................................................... 6, 7

**Treatises**

3 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON
   COPYRIGHT  § 13.05 [A][1][a] ................................................................................ 11

**Constitutional Provisions**

U.S. CONST., art. I, § 8, cl. 8 ........................................................................................ 8

Defendant American Broadcasting Companies, Inc. ("ABC") submits this memorandum in support of its motion for summary judgment, dismissing the claims of the Second Amended Complaint in whole or in part on the grounds that ABC's use of images in which Plaintiff Dlugolecki claims copyrights was not in fact in violation of any of Plaintiff's copyrights[1].

## BRIEF STATEMENT OF FACTS

This action arises out of the publishing use of certain images of Meghan Markle that originally appeared in high school yearbooks from her junior and senior years at Immaculate Heart High School, published in 1998 and 1999 respectively (collectively, the "Markle Images")[2].   The yearbooks were published without any copyright notices having been attached to any image nor to the subject yearbook, thus making it impossible to know whom, if anyone, claimed rights in such images. *See* SAC, Exhibit C (copies of images in which Plaintiff claims rights, shown, as allegedly published, without any indicia of copyright).  Indeed, it was not until December 2017, nearly two decades after publication, that Plaintiff John

---

[1] Solely for purposes of this motion, ABC accepts the validity of Dlugolecki's copyrights in the images attached to the Second Amended Complaint as Exhibit C, referred to herein as the "Dlugolecki Images."

[2] While Plaintiff claims rights in certain additional images of Markle, *see* Second Amended Complaint, Exhibit C, such images were never used by ABC, and are thus irrelevant to this action.  The images used by ABC, and thus at issue in this case are annexed to the Affirmation of Barbara J. Lipshutz (Lipshutz Aff.) as Exhibit A. Copies of the entirety of the broadcasts, previews and social media posts in which ABC used the Markle Images were provided to Plaintiff in discovery as DEF0001 through DEF0017, and, due to the difficulty of filing videos through the ECF system, shall be provided to the Court with the hard copy of this motion.

Dlugolecki, a school photographer, SAC ¶ 10, registered copyright in a single image – Markle's senior year high school portrait. SAC, Ex. D. Thereafter, in April 2018, Plaintiff registered a copyright in additional images of Markle. *Id.* This litigation followed one month later, alleging violation of Dlugolecki's copyrights through as-yet unspecified uses of the Markle Images by, *inter alia*, ABC.

ABC used the Markle Images in connection with several biographical segments of news shows.  In particular, on November 27, 2017, Buckingham Palace announced that Meghan Markle, an American actress with mixed racial heritage, had become engaged to Prince Harry, who was then fifth in line to the British throne.  This event was treated as major news throughout the world and particularly in the United States, where it was covered by most media outlets.  ABC, in particular, covered the story in its regularly scheduled morning news program (Good Morning America) and late night news program (Nightline) on the day of the announcement and, in the case of Good Morning America, the next day, when more information became available.  It also covered it on its regularly scheduled weekly news "magazine" show, 20/20 (including previews of the show on Good Morning America and Nightline on the day of the 20/20 broadcast).  Each of these segments related to Markle, whom ABC described as the "American Princess," discussing Markle's education and childhood, including interviews of her teachers and of students at the school she attended, as well as the anticipated impact of her background on her role in the royal family.  In particular:

- ***GOOD MORNING AMERICA, November 27, 2018.***  In connection with that morning's announcement of Markle's engagement to Prince Harry of England, Good Morning America, a morning news show, broadcast a segment that discussed Markle's background in connection with questions about how she will fit into the royal family, including a short biographical piece on Markle. The segment included 4 seconds, 25

frames (Time Code 7:32:12;08 - 7:32:17;03[3]) use of a headshot of Markle taken for Immaculate Heart's yearbook when she was a senior (the "Senior Headshot") during a 2-hour broadcast.  No other Markle Image was used in connection with this production.

- ***GOOD MORNING AMERICA, November 28, 2017.***  In connection with another newsworthy biographical piece on Markle, again relating to her engagement and discussing how she will fit into the royal family, ABC used a photo of Markle in her high school drama club (the Genesian Society, hereinafter the "Junior Genesian"), with her teachers, in connection with discussion of her high school and participation in high school and college drama productions.  This image was used for 1 second, 28 frames (Time Code 7:33:41;10 – 7:33:43;08) during a 2-hour broadcast. No other Markle Image was used in connection with this production.

- ***GOOD MORNING AMERICA, December 1, 2017.***  This news broadcast included a longer newsworthy biographical segment on Markle, taken in whole from a 20/20 episode to be broadcast that evening (and discussed below), and described as a "sneak peak" of the 20/20 broadcast.  In that context, Good Morning America used a cropped version of the Junior Genesian image for 2 seconds, 4 frames (Time Code 8:15:54;25 – 8:15:56;29) in connection with a discussion of Markle's childhood and education and, in particular, an interview with

---

[3] The first three numbers of the Time Code refer to the time that the image was shown on screen.  The last number counts the number of frames in each second; there are 30 frames per second.  Thus, 7:32:12;08 means that the image first appeared at 7:32 and 12 seconds in the morning, 8/30 of the way to 7:32 and 13 seconds.

the teacher pictured on the left side of the image, next to Markle; a cropped version of a composite of the 1999 senior class from Immaculate Heart High School, that hangs on the wall at the school and was presumably created by Dlugolecki for precisely that purpose (hereinafter, the "Composite"), for 2 seconds, 1 frame (Time Code 8:16:06;19 – 8:16:08;20), a close-up of Markle's yearbook image that appears in that composite (that is, the Senior Headshot, 3 seconds, 2 frames; Time Code 8:16:12;13 – 8:16:15;15) and another yearbook photo (the "____ Headshot," 2 seconds, 24 frames; Time Code 8:16:20;14 – 8:16:23;08), all in connection with an interview with 3 current Immaculate Heart students, discussing how they react to and have been affected by the composite image (referred to as the "Student Body Star of Fame") and how the general reaction at their school to the news of Markle's engagement; Markle's Senior Headshot for 4 seconds, 13 frames (Time Code 8:16:41:17 – 8:16:46;00) in connection with a teacher's discussion of how, by graduation, Markle was determined to "make it big."  The broadcast also included a 30-second preview of an upcoming 20/20 broadcast (discussed below), including a 23-frame use (that is, less than one second) of the Senior Headshot in connection with reference to Markle's "amazing backstory" (Time Code 8:55:17;26 – 8:55:18;19).

- ***NIGHTLINE, November 27, 2017.***  This news program included a cropped version of the Senior Genesian photo was used for 2 seconds, 21 frames (Time Code 00:43:12;14 – 00:43:15;05) in connection with a segment that consisted of a biographical discussion of Markle's "humble beginnings," in contrast to her engagement to a member of the British

royal family, and how unusual her background is in the history of the British royal family.

- ***NIGHTLINE, December 1, 2017.***  This Nightline segment, like the Good Morning America segment broadcast later the same day, was taken from the 20/20 broadcast, and served as a preview thereof.  In that regard, it was wholly another newsworthy, biographical segment discussing Markle's history, and how she will fit into the royal family. ABC first used Markle's Senior Headshot for 1 second, 2 frames (Time Code 00:37:38;05 – 00:37:39;07) as part of a preview for the full segment, referring to the fact that Markle's "road to royalty" was not always a fairy tale.  Later in the broadcast, it used the Junior Genesian image for 3 seconds, 7 frames (Time Code 00:55:25;25 – 00:55:29;02) while airing an interview with the teacher pictured on the left side of the image; the composite (less than one second – 26 frames, Time Code 00:55:38;07 – 00:55:40;03) and the Senior Headshot that appears in the composite (1 second, 8 frames, Time Code 00:55:42;16 – 00:55:43;24) were used in connection with an interview with current Immaculate Heart students, as described in connection with Good Morning America also aired on December 1, including how Markle's background would be likely to affect her role in the royal family.

- ***20/20, "The American Princess," December 1, 2017.***  This was an hour-long newsworthy production devoted entirely to Markle's personal history, and how it will impact her as a part of the British Royal family in light of her engagement just days earlier.  Most of the segments discussed above were taken from this production. The Junior Genesian (3 seconds, 5 frames, Time Code 22:06:38;23 – 22:06:41;28), composite (2 seconds, 8 frames, Time Code 22:07:05;04 – 22:07:07;12), Senior

Headshot (3 seconds, 4 frames, Time Code 22:07:11;05 – 22:07:14;09) were used in the same manner as they were used on the Good Morning America preview, in connection with an interview with the teacher pictured, and with current students discussing Markle and her impact on them.  In addition, cropped versions of the Senior Genesian (6 seconds, 7 frames, Time Code 22:09:09;28 – 22:09:16:05) and Junior Genesian (3 seconds, 7 frames, Time Code 22:09:29;21 – 22:09:32;28) were used in conjunction with an interview with a girl who had been bullied, and whom Markle had defended.

All told, these 6 broadcasts, totaling 8 hours of broadcast time, included 49 seconds, 25 frames of use of Markle Images (that is, $1/600^{th}$, or 0.173 of 1% of broadcast time) among dozens of other images of Markle, as well as other stories.[4]

As discussed below, given the clear biographical and newsworthy context of each use, each in connection with programs produced by the news division of ABC, as well as its fleeting nature, each use is a fair use under applicable law and, accordingly, does not violate any copyright or other laws.

## THE LEGAL STANDARD GOVERNING THIS MOTION

Summary judgment is appropriate when, after pertinent adequate discovery, the evidence demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A disputed fact is "material" only where its resolution might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue is "genuine" if the evidence is

---

[4] In addition to these productions, there were 2 previews for the 20/20 broadcast that included the Senior Headshot for approximately 1 second.  Two images were also used on video previews posted on Twitter.

sufficient for a reasonable jury to return a verdict for the non-moving party. *Id.* The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The moving party may satisfy that burden by showing "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325.

Once the moving party has met its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Rather, the non-moving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Id.* at 587. Only genuine disputes over facts that might affect the outcome of the lawsuit will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248; see also *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (holding that the non-moving party must present specific evidence from which a reasonable jury could return a verdict in its favor). A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer, Inc.,* 198 F.3d 1130, 1134 (9th Cir. 2000).

A court, in its summary judgment analysis, may consider the pleadings, discovery, and disclosure materials, as well as any affidavits on file. Fed. R. Civ. P. 56(c)(2). Where the moving party's version of events differs from the non-moving party's version, a court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).

The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of fact and defeat summary judgment. *Thornhill*

*Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson*, 477 U.S. at 253.

As demonstrated below, there is no genuine issue of material fact that ABC's uses of the Markle Images as described herein were all "fair use" or, in the alternative, so *de minimis* as to not constitute a copyright violation.  Accordingly, summary judgment in this matter should be granted.

## ARGUMENT

### I.    USE OF DLUGOLECKI'S IMAGES OF MARKLE FOR A FEW SECONDS IN CONNECTION WITH BIOGRAPHICAL FEATURES ON MARKLE IS A "FAIR USE"

Courts must consider four factors in determining whether use of a copyrighted work is a "fair use," and therefore not a copyright violation:  specifically, (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion taken; and (4) the effect of the use upon the potential market. 17 U.S.C. § 107.

However, "[w]hile, Defendants have the burden of proving that their potentially infringing use was fair, *see Infinity Broadcast Corp. v. Kirkwood,* 150 F.3d 104, 107 (2d Cir. 1998), Defendants need not establish that all of the factors favor them."  *Video-Cinema Films, Inc. v. CNN, Inc.*, 2001 U.S. Dist. LEXIS 25687, *17-18 (S.D.N.Y. November 28, 2001).  As the court pointed out in *Lucasfilm Ltd. v. Ren Ventures*, 2018 U.S. Dist. LEXIS 144116, *15-16 (N.D. Cal. June 29, 2018):

> The four statutory factors of fair use should not be "treated in isolation, one
> from another. All are to be explored, and the results weighed together, in light
> of the purposes of copyright." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S.
> 569, 578, 114 S. Ct. 1164, 127 L. Ed. 2d 500 (1994). "The ultimate test of fair
> use, therefore, is whether the copyright law's goal of 'promot[ing] the

Progress of Science and useful Arts,' U.S. CONST., art. I, § 8, cl. 8, 'would be better served by allowing the use than by preventing it.'" *Castle Rock Ent't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 141 (2d Cir. 1998), quoting *Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1077 (2d Cir. 1992). For this reason, courts often give more weight to the first and fourth factors of the fair use test because they are more closely related to incentivizing the creation of new arts ….

Citing, *inter alia, Authors Guild v. Google, Inc.*, 804 F.3d 202, 220 (2d Cir. 2015) ("The second factor has rarely played a significant role in the determination of a fair use dispute."); *Campbell*, 510 U.S. at 588, 599 (holding transformative parodies can be fair use even though they copy the "heart" of the original and "almost invariably copy . . . expressive works"); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 613 (2d Cir. 2006) ("[C]opying the entirety of a work is sometimes necessary to make a fair use of the image").

In this case, a consideration and weighing of these factors unquestionably demonstrates that ABC's use of the Dlugolecki Images was, in each case, a fair use.

**A. Purpose and Character of the Use**

As the Supreme Court stated in its precedential decision on fair use, "The first fair use factor addresses 'whether the new work merely 'supercedes the objects' of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning or message, in other words, whether and to what extent the new work is 'transformative.'" *Campbell v. Acuff-Rose Music*, 510 U.S. 569, 579-80 (1994) (internal citations omitted); *see also, e.g., Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1164 (9th Cir. 2007); *Weinberg v. Dirty World, LLC*, 2017 U.S. Dist. LEXIS 221759, *15 (C.D. Cal. July 27, 2017); 17 U.S.C. § 107(1). The "more transformative the new work, the less will be the significance of the other factors." *Claims Mgmt. Servs. v.*

*Delsman*, 2009 U.S. Dist. LEXIS 61825, *12, (N.D. Cal. July 17, 2009); *see also Campbell,* 510 U.S. at 578-79).  Indeed, "transformative uses 'lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright' because such works generally further 'the goal of copyright, to promote science and the arts[.]'"  *Weinberg*, 2017 U.S. Dist. LEXIS 221759 at *14-15 (C.D. Cal. July 27, 2017), quoting *Campbell*, 510 U.S. at 577.

In this case, each of the images was used, in all instances, for newsworthy biographical photograph reference, illustrating Markle's high school years, her teachers' memories of her, her early forays into drama productions, and her continuing influence and impact on current students, and discussing how Markle's history would impact her in her new role in the royal family.  Such use is patently different from the original purpose of the images, as personal and family keepsakes and memorabilia.  Courts have often found that this type of usage is accordingly transformative.

*Calkins v. Playboy Enters. Int'l, Inc.*, 561 F. Supp. 2d 1136, 1141-42 (E.D. Cal. 2008), which involved Playboy's unlicensed use of a high school graduation photo as part of a biographical feature on its centerfold, is particularly instructive on that point.  The court stated:

> [W]hile the mere commercial use of copyrighted material generally weighs against a finding of fair use, it does not end the inquiry under this factor. Rather, the Court must consider whether and to what extent the new work is transformative. In this regard, the Court finds PEI's use of the Photograph to be transformative because although PEI made a replica of the Photograph, the reproduced image was much smaller and served an entirely different function than the original image. Mother Lode originally created the Photograph for the limited purpose of being used as a gift by Shannon's family and friends, … while PEI used the Photograph, in conjunction with other photographs of Shannon and a handwritten biography, for the purpose of personalizing Shannon by providing insight into her life, including how she grew up and

what her interests are…. Thus, because PEI used the Photograph in a new context to serve a different function (inform and entertain Playboy readers) than the original function (gifts for family and friends), PEI's use did not supersede the function of the original Photograph, and therefore PEI's use is transformative. *See Kelly[ v. Arriba Soft Corp.*, 336 F.3d 811, 818-19 (9th Cir. 2003)]; see also *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 22-23 (1st Cir. 2000) (republication of photographs taken for a modeling portfolio in a newspaper was transformative because the photos served to inform, as well as entertain). Indeed, the reproduced image is not a suitable substitute for someone who wishes to use the Photograph as a gift because the image is significantly smaller and of lesser quality than the original Photograph. In other words, it is unlikely that Playboy readers would use the reproduced image for the original purpose for which it was created. Accordingly, because the transformative purpose of PEI's use of the Photograph is considerably more important than the fact that PEI used the Photograph as part of a for-profit enterprise, the first fair use factor weighs heavily in favor of a fair use determination."

Other courts have similarly found that biographical use of an image is transformative, thus weighing in favor of a fair use determination. *Monster Communications, Inc. v. Turner Broadcasting Network, Inc.*, 935 F. Supp. 490 (S.D.N.Y. 1996), for example, found that the use of at least nine film clips totaling at least 41 seconds in a film biography of Muhammed Ali was transformative, and accordingly denied a preliminary injunction barring showing of film that included the clips.  Specifically with respect to the first factor, the court stated:

The allegedly infringing work … is a biography. While it is commercial in nature, it "undeniably constitutes a combination of comment, criticism, scholarship and research, all of which enjoy favored status under § 107." *Arica Institute, Inc. v. Palmer*, 761 F. Supp. 1056, 1067 (S.D.N.Y. 1991), *aff'd*, 970 F.2d 1067 (1992). As Turner argues, there can be little doubt that Ali is 'a figure of legitimate public concern and that his television biography is a subject of public interest. Hence, the first of the fair use factors cuts in favor of Turner although, as the Nimmers point out, it does not

"necessitate a finding of fair use." 3 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT ("NIMMER") § 13.05 [A][1][a], at 13-161 to 162 (1995); *see also New Era Publications International, ApS v. Henry Holt & Co., Inc.*, 873 F.2d 576, 583 (2d Cir. 1989), *cert. denied*, 493 U.S. 1094, 107 L. Ed. 2d 1071, 110 S. Ct. 1168 (1990); *Rosemont Enterprises, Inc. v. Random House, Inc.*, 366 F.2d 303, 307 (2d Cir. 1966), *cert. denied*, 385 U.S. 1009, 17 L. Ed. 2d 546, 87 S. Ct. 714 (1967).

Monster Communs., 935 F. Supp. at 493-494.

*Hofheinz v. A&E Television Networks, Inc.*, 146 F. Supp. 2d 442 (S.D.N.Y. 2001), similarly, found that use of 20-second film clip in biography of actor Peter Graves was transformative, and a fair use, stating, "There is a strong presumption that this factor favors the defendant when the allegedly infringing work fits the description described in § 107 of 'criticism, comment, news reporting, teaching . . ., scholarship or research.' The Court of Appeals summed up the application of this factor to works of biography: 'our cases establish that biographies in general and critical biographies in particular, fit 'comfortably within' these statutory categories 'of uses illustrative of uses that can be fair.'"" *Hofheinz*, 146 F. Supp. 2d at 446. *Video-Cinema Films, Inc. v. Cable News Network*, 2001 WL 1518264 (S.D.N.Y. Nov. 28, 2001) found that use of film clips of between 9 to 20 seconds in news reports regarding death of actor Robert Mitchum was a fair use, and *Sofa Entertainment, Inc. v. Dodger Productions, Inc.*, 709 F.3d 1273 (9th Cir. 2013) found that use of seven-second clip from *The Ed Sullivan Show* used in *Jersey Boys*, the biographical musical about Frankie Valli and the Four Seasons, was a fair use because the clip was used as "historical reference point" and was therefore transformative.

*Red Label Music Publ., Inc. v. Chila Prods.,* 2019 U.S. Dist. Lexis 90159 (N.D. Ill. May 30, 2019), decided just last month, found that use of 59 seconds of

the *Super Bowl Shuffle*, a song recorded by the legendary 1985 Chicago Bears that is widely considered to have been an instrumental part in their record-breaking season and Super Bowl victory, broken up into 16 snippets lasting between one and eight seconds, was transformative.

> The *Super Bowl Shuffle* is not serving its original function of entertainment in the film.  In fact, it serves almost no expressive function at all, but instead acts simply as a historical guidepost within a video that constructs new narratives about the history of the Bears and the NFL.

2019 U.S. Dist. Lexis 90159 at * 16 (internal citations and quotation omitted). Accordingly the court found that, "[t]he first factor weighs in favor of fair use because the *Shuffle's* presence in the film is purely descriptive and designed merely to preserve a certain aspect of the Bears history."  2019 U.S. Dist. Lexis 90159 at * 17 (internal citations and quotation omitted).

*Elvis Presley Enters. v. Passport Video*, 349 F.3d 622 (9th Cir. 2003) is also instructive.  In that case, Defendants produced a 16-hour boxed video set chronicling the life of Elvis Presley, including uncut clips of each and every one of his television appearances.  Advertisements for the video set emphasized that these videos, standing alone, were a reason to purchase the product.  The Ninth Circuit ultimately found that use of the uncut appearances was "not consistently transformative."   However, the court did find that many of the shorter uses were transformative:

> Passport's use of many of the television clips is transformative because the clips play for only a few seconds and are used for reference purposes, while a narrator talks over them or interviewees explain their context in Elvis' career.

> Courts have described new works as 'transformative' when the works use copyrighted material for purposes distinct from the purpose of the original material. Here, Passport's use of many of the television clips is transformative

because they are cited as historical reference points in the life of a remarkable entertainer. *The Definitive Elvis*' nature as a biography transforms the purpose of showing these clips from pure entertainment to telling part of the story of Elvis' life.

*Id*. at 628-29 (citations omitted).

In this case, in each and every instance, the Markle Images were used by ABC as "historical reference points" in Markle's life, telling her biography as part of a news programs.  This differs from the original purpose of the images, to decorate mantles, trade with friends, or otherwise serve as memorabilia of high school.  Accordingly, each use is transformative.

First, ABC uses each of the images in conjunction with a plethora of other images and video, along with voiceover providing a biographical context, in connection with editorial content discussing what Meghan Markle was like in high school, how her former teachers and classmates viewed her, how her engagement to Prince Harry affected students at her high school, and how her background is likely to affect and influence the royal family, in light of her engagement to Prince Harry. As the Court stated in *Elvis Presley Enters*., 349 F.3d at 629, "It would be impossible to produce a biography of Elvis without showing some of his most famous television appearances for reference purposes."  It would be equally impossible to discuss Markle's high school years, a time when she embarked upon many of the endeavors for which she is known, including acting and social justice, without photographs of her during those school years.

Next, the images are used fleetingly – only one image was used for as much as 6-1/4 seconds, and most were used for less than 3 seconds – in black and white. Moreover, their fleeting onscreen use patently is not a suitable substitute for the traditional mantle placement of high school graduation or class photos, or

1    memorabilia of the Genesian images.[5]

2        Notably, the Markle Images were used by ABC "in a new context to serve a

3    different function … than the original function …." Because ABC's "use did not

4    supersede the function of the original Photograph," because such used was

5    biographical, and because the images were used to provide "historical reference

6    points," the uses were "transformative." *See Calkins v. Playboy Enters. Int'l, Inc.*,

7    561 F. Supp. 2d 1136, 1142.

8        Indeed, if there were any question about this factor, it would be decided by

9    the fact that the Markle Images were used in connection with that presentation of

10   news of the engagement of Britain's Prince Harry, in the form of a biography.  17

11   U.S.C. § 107 itself states, "Notwithstanding the provisions of sections 106 and

12   106A, the fair use of a copyrighted work … , for purposes such as criticism,

13   comment, news reporting, teaching (including multiple copies for classroom use),

14   scholarship, or research, is not an infringement of copyright."  "It is well settled that

15   where the Defendants' use is for one of the purposes set forth in the statute, there is

16   a strong presumption this factor favors the alleged infringer. '" *Video-Cinema Films,*

17   *Inc. v. CNN, Inc.*, 2001 U.S. Dist. LEXIS 25687, *19-20, citing *Arica Institute, Inc.*

18   *v. Palmer*, 970 F.2d 1067, 1077 (2d Cir. 1992), and quoting *Wright v. Warner*

19   *Books, Inc.,* 953 F.2d 731, 736 (2d Cir. 1991).

20       The first factor, therefore, weighs decisively in favor of ABC.

21

22

23       [5] As discussed below, use of the Markle Images is indeed *de minimis.*  For
     example, in the 11/28/2017 edition of Good Morning America, less than 2 seconds
24   of the two-hour broadcast included a single one of the Markle Images, a cropped
     version of her Junior Genesian photo.  Similarly, the 11/27/2017 edition of Nightline
25   used the Senior Genesian photo for less than ten seconds.  *See Forlenza v. AT&T*,
     2004 U.S. Dist. LEXIS 29549 (C.D. Cal. April 4, 2004); *Gordon v. Nextel*
26   *Communs.,* 345 F.3d 922 (6th Cir. 2003).

27

28

## B. Nature of Plaintiff's Work

The second fair use factor looks to the nature of the plaintiff's work. 17 U.S.C. § 107(2). Where, as here, transformative uses are involved, this factor has been described as "not … terribly significant in the overall fair use balancing…." *Sedgwick Claims Mgmt. Servs. v. Delsman* 2009 U.S.Dist. LEXIS 61825, at *15 (N.D.Cal. July 16, 2009); *see generally Campbell*, 510 U.S. at 586 (noting that the second factor was "not much help" in the parody context); *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 803 (9th Cir. 2003).

"Works that are creative in nature are closer to the core of intended copyright protection than are more fact-based works." *Arriba*, 336 F.3d at 820.  Indeed, "[t]he scope of fair use is greater when informational as opposed to more 'creative' works are involved." *Hustler Magazine, Inc. v. Moral Majority, Inc.,* 796 F.2d 1148, 1154-55 (9th Cir. 1986); *see also Marcus v. Rowley*, 695 F.2d 1171, 1176 (9th Cir. 1983); *see Harper & Row Publishers v. National Enterprises*, 471 U.S. 539, 563, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985) ("The law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy.").

Here, the Markle Images, while having some creative elements, are more in the nature of fact of fact-based works, depicting Markle and her peers as they appeared at a certain point in time, using formulaic poses, and intended to document precisely that, and thus this factor favors fair use.  Even if they were found to be creative, however, given that the usage was in all cases highly transformative, as discussed above, this factor is "not … terribly significant in the overall fair use balancing…." *Sedgwick Claims Mgmt. Servs.,* 2009 U.S.Dist. LEXIS 61825, at *15.

## C. Amount of the Work Used

"The Ninth Circuit has held that the reuse of an entire image may be reasonable if it serves the defendant's intended purpose."  *Sedgwick Claims Mgmt. Servs*, 2009 U.S. Dist. LEXIS 61825, at *17.  *See also, e.g., Perfect 10, Inc. v.*

*Amazon.com, Inc.*, 508 F.3d 1146, 1166 (9th Cir. 2007) (use of entire image necessary to facilitate use of search engine); *Kelly*, 336 F.3d at 821 (same); *Calkins*, 561 F. Supp. 2d at 1142-43 ("While wholesale copying militates against a finding of fair use, the extent of permissible copying varies with the purpose and character of the use…. For instance, if the secondary user only copies as much as is necessary for his or her intended use, such as replicating an entire photograph, then this factor will not weigh against him or her." Accordingly, magazine's use of model's high school photograph for the purpose of personalizing her was reasonable since "[t]o use a lesser portion of the Photograph would have defeated [the magazine]'s purpose for using it.").

Here, ABC used the entirety of certain images (the two headshots), but less than the whole of others (the Genesian photos and the composite photo). In each case, however, it used only what was needed of each image to accomplish its biographical purpose. Use of less than the whole of the headshots would not fairly depict Markle and, indeed, would present an odd and skewed image. The Genesian and composite photos were cropped to show only so much as was needed.

This factor, accordingly, would appear to be neutral, and should not weigh against ABC.

### D. Effect of Use on the Potential Market

"The more transformative the new work, the less likely the new work's use of copyrighted materials will affect the market for the materials." *Elvis Presley Enters*, 349 F.3d at 631. A decrease in the value of the copyrighted work resulting from a transformative use is irrelevant to this factor. *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 805 (9th Cir. 2003).

The *Calkins* court added another factor – that the plaintiff had never before licensed the photo, and had no intention of doing so in the future.

In the present case, Calkins contends that PEI's reproduction of the Photograph caused Mother Lode [the Plaintiff's company] to lose revenue in the form of lost sales of the Photograph. However, it is undisputed that Mother Lode is not in the business of reselling its clients' photographs to third parties. Furthermore, Calkins concedes that she neither intended nor intends to publish the Photograph or otherwise exploit it in any way (e.g., sell or license the Photograph to a third party).... Thus, the question of market harm turns on whether PEI's use of the Photograph had a demonstrable effect on Calkins' ability to sell reprints of the Photograph to Shannon. In this regard, there is no evidence before the Court indicating that PEI's use of the Photograph had any discernable impact on Shannon's decision not to order reprints of the Photograph. In fact, it is undisputed that neither Shannon nor anyone else has ordered a reprint of the Photograph since it was created in 1996. Moreover, because PEI's reproduction of the Photograph is not an adequate substitute for the original (i.e., PEI's reproduced image does not fulfill the demand for the original Photograph), PEI's use of the Photograph does not usurp a market that properly belongs to Calkins. In short, there is no evidence before the Court demonstrating that PEI's use of the Photograph interfered in any way with the marketability of the work.

*Calkins*, 561 F. Supp. 2d at 1143-1144.

In this case, Plaintiff admits that prior to December 1, 2017, no one other than Markle, her family, or the school that she attended, ever requested that he license or otherwise provide any of the Markle Images to them, and that he had never engaged a professional agency to represent him.  Plaintiff's Response to Requests for Admissions 9 and 10.

Finally, Courts look to the fact that defendants did not profit directly from use of the images.  As the Court stated in *Calkins v. Playboy Enters.,* 561 F. Supp. 2d at 1141:

There is no evidence before the Court indicating that PEI profited from the use of the Photograph. Indeed, the Photograph was merely one of hundreds of photos appearing in the January 2004 50th Anniversary edition of Playboy. Therefore, while Playboy is published for profit and the use of the Photograph

contributed to its entertainment value, the manner of commercial use in this case does not weigh strongly against a fair use determination.

Here, similarly, ABC did not profit directly from use of any of the images. In fact, the advertising that appears on Good Morning America, Nightline and 20/20 is not tied directly to any photo use or, indeed, to the subject of any of these programs. Rather, ABC, as is the industry practice, booked advertising for its programs well in advance, without knowledge of what stories were to be told, or what images used.[6]

In sum, because the use was strongly transformative, Dlugolecki had never licensed the Markle images prior to ABC's use, and never licensed any other yearbook photos, and ABC did not profit from use of any of the Markle Images, this factor weighs in favor of fair use.

### E. Conclusion

In this case, ABC made minimal use of 4 images, just what was necessary, totaling less than 50 seconds, over 8 hours of broadcast time.  As demonstrated above, such use was wholly transformative, making newsworthy, biographical use of images that were intended for use as memorabilia by family and friends.  The black and white images were not substitutes for the originals – they could hardly be placed on the mantle or wall where graduation pictures usually reside – and were the type of images that Plaintiff had never licensed.  All uses, accordingly, were "fair use," and did not violate any copyright of Plaintiff.

---

[6] Indeed, the first use of any Markle Image was at 8 am on November 17, before business hours, on the day that the engagement was announced.  It defies logic to think that advertising could have been booked and scheduled that quickly and outside business hours.

## II.   USE OF DLUGOLECKI'S IMAGES OF MARKLE FOR A FEW SECONDS IS DE MINIMIS AND, ACCORDINGLY, NOT A COPYRIGHT VIOLATION

Even if ABC's use of the Markle Images were not held to be fair use, such use was, in each instance, *de minimis,* and therefore not a copyright violation.

To establish that a copyright infringement is *de minimis*, the alleged infringer must demonstrate that the copying of the protected material is so trivial "as to fall below the quantitative threshold of substantial similarity, which is always a required element of actionable copying." *Ringgold v. Black Entertainment TV, Inc.*, 126 F.3d 70, 74 (2d Cir. 1997); *See also, e.g., Gordon v. Nextel Communs.,* 345 F.3d 922, 924 (6th Cir. 2003). "In determining whether the allegedly infringing work falls below the quantitative threshold of substantial similarity to the copyrighted work, courts often look to the amount of the copyrighted work that was copied, as well as the observability of the copyrighted work in the allegedly infringing work.  Observability is determined by the length of time the copyrighted work appears in the allegedly infringing work, as well as the prominence in that work as revealed by the lighting and positioning of the copyrighted work." *Gordon,* 345 F.3d at 925, citing *Ringgold,* 126 F.3d at 75; *see also, e.g., Forlenza v. AT&T*, 2004 U.S. Dist. LEXIS 29549, *9 (C.D. Cal. April 4, 2004) ("In determining whether the allegedly infringing work falls below the quantitative threshold of substantial similarity to the copyrighted work, courts often look to the amount of the copyrighted work that was copied, as well as the observability of the copyrighted work in the allegedly infringing work.

In analyzing whether a particular use of copyrighted material should be deemed *de minimis*, several courts have looked to the regulation issued by the Librarian of Congress providing for royalties to be paid by public broadcasting

entities for use of published pictorial and visual works, 37 CFR § 381.8 (formerly 37 C.F.R. § 253.8), which distinguishes between a "featured" display and a "background and montage" display, setting a higher royalty rate for the former. The Librarian has defined a "featured" display as a "full-screen or substantially full screen display for more than three seconds," and a "background or montage" display as "any display less than full-screen, or full-screen for three seconds or less." *Id.  See generally Gordon,* 345 F.3d at 924; *Ringgold,* 126 F.3d at 77. *See also Forlenza,* at _ (image use is fleeting when it appears for less than 3 seconds in a 60 second commercial, and because it "emerges in a series of other choppy and fleeting images, its appearance is not particularly observable" and, therefore, *de minimis*).

In this case, ABC used the Junior Genesian image for only 1 second, 28 frames out of the 2-hours broadcast of Good Morning America on November 28, 2017, as a fast intercut with a somewhat lengthy segment, including an interview with one of the teachers shown.  This, therefore, under the above standard, is a *de minimis* use that does not constitute a copyright violation.

On December 1, it used the composite image twice on Good Morning America – the first time for 2 seconds, 1 frame, and the second for 26 frames. Combined, these uses are less than 3 seconds, fleeting, showing only a small portion of the total image, and somewhat unfocused.  Accordingly, they are both *de minimis* uses that do not constitute a copyright violation.

Also on December 1, ABC used the Senior Genesian image on Good Morning America for 2 seconds, 21 frames, again fleeting and showing only a small portion of the total image.  Again, therefore, it is a *de minimis* use that does not constitute a copyright violation.

Again on December 1, ABC used the Junior headshot for 2 seconds, 21 frames, another *de minimis* use.

Nightline, also on December 1, also made *de minimis* use of Markle Images – the composite image for a scant 26 frames; and the Senior Headshot for 1 second, 2 frames and 1 second, 8 frames, respectively.  Again, these uses are *de minimis*.

Nightline, on December 1, also made *de minimis* use of Markle Images – the composite image for a scant 26 frames; and the Senior Headshot for 1 second, frames and 1 second, 8 frames, respectively.  Again, these uses are *de minimis*.[7]

## CONCLUSION

For the foregoing reasons, Defendants American Broadcasting Companies, Inc. requests that summary judgment in its favor be granted, and that this action be dismissed because none of the alleged uses of the images in which Plaintiff claims rights violate any copyright therein.

DATED: June 18, 2019

_/s/_____
**MILES L. PRINCE**
**Attorney for Defendants**

**ARTHUR J. JACOBS**
**BARBARA J. LIPSHUTZ**
**Jacobs & Burleigh LLP**
*Pro Hac Vice Granted*

---

[7] That production also used the Junior Genesian image for 3 seconds, 2 frames. ABC respectfully submits that this is so close to 3 seconds that it should also be considered *de minimis*.